IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PNC BANK, NATIONAL
ASSOCIATION,

    Plaintiff,

    v.

GATOR PIQUA PARTNERS,
LLLP, *et al.*,

    Defendants.

:
:
:
:
:

Case No. 3:12-cv-369

JUDGE WALTER H. RICE

---

DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS (DOC. #18)

---

After Defendant, Gator Piqua Partners, LLLP ("GPP"), defaulted on a Promissory Note executed in connection with its purchase of a shopping center, Plaintiff, PNC Bank ("PNC"), the holder of the Promissory Note, filed suit against GPP and James A. Goldsmith, the Guarantor on the Promissory Note, seeking foreclosure and other relief. This matter is currently before the Court on Defendant GPP's Motion for Judgment on the Pleadings. Doc. #18.

I. **Background and Procedural History**

On October 12, 2007, James A. Goldsmith ("Goldsmith"), as Manager and Sole Member of Gator Piqua, LLC, the Sole General Partner of Gator Piqua Partners, LLLP ("GPP"), executed a Promissory Note in the principal amount of

$2.5 million, in connection with the purchase of Piqua Plaza shopping center. Plaintiff PNC Bank is the current holder of the Promissory Note. After GPP defaulted on the Note, PNC filed a Complaint seeking judgment against GPP in the amount of $1,695,749.25, plus interest. In addition, PNC sought foreclosure, an order of sale, and the appointment of a receiver. Pursuant to the terms of a related Guaranty, PNC also sought judgment against Goldsmith in the amount of $593,512.24. Doc. #4.

On November 13, 2012, with GPP's consent, the Court issued a Consent Judgment in Mortgage Foreclosure. Doc. #11. The Consent Judgment foreclosed "all right, title, lien and equity of redemption which said Defendant . . . had in the Premises and Assets known as Piqua Plaza" and ordered that "the Premises be sold at foreclosure." The sale proceeds were to be deposited into the Court's registry account, until the Court determined amounts due under the Promissory Note.

On November 30, 2012, the Court sustained PNC's Motion to Appoint Receiver, Doc. #12, and appointed CBRE, Inc. ("CBRE") "as receiver to maintain the subject Property and to collect the rents, issues, incoming profits derived from the Property, and to preserve and/or sell the Property in order to protect the interests of all concerned." Doc. #14.

Defendant GPP has filed a Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). It notes that the Court has already entered a Consent Judgment on Counts Two and Three of the Complaint, foreclosing GPP's

2

right, title, lien and equity of redemption in the Premises, and in all collateral that was subject to a security interest. According to GPP, PNC has no additional remedy available because, in the Loan Agreement, PNC waived its right to recoup any of GPP's assets beyond the "Premises" and "Collateral" defined in the Mortgage. For this reason, GPP maintains that Count I of the Complaint, seeking recovery under the Promissory Note, must be dismissed.

## II. Standard of Review

Motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) are analyzed under the same standard as motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Warrior Sports, Inc. v. National Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (internal citation and quotation marks omitted). However, the court need not accept as true legal conclusions or unwarranted factual inferences. *Id.* (citing *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir.1999)).

To withstand a Rule 12(c) motion for judgment on the pleadings, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Commercial Money Ctr., Inc. v. Illinois*

*Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, *i.e.*, more than merely possible." *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A "legal conclusion couched as a factual allegation" need not be accepted as true, nor are recitations of the elements of a cause of action sufficient. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

While the allegations in the complaint are the primary focus in assessing a Rule 12(c) motion, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[ ] also may be taken into account." *Barany–Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

### III.  Analysis

GPP's motion for judgment on the pleadings is premised on Section 7.11 of the Loan Agreement, which is attached to the Complaint as Exhibit F. Section 7.11 states, "Lender hereby waives any right of setoff or recoupment with respect to all assets of Borrower." GPP maintains that because the word "recoupment" is not defined in the Loan Agreement, it must be given its "plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly

4

intended from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 245-46, 374 N.E.2d 146, 150 (Ohio 1978).

Citing *Black's Law* Dictionary (9th ed. 2009), GPP argues that "recoupment" means "recovery" or "regaining."[1] According to GPP, when PNC waived its right of "recoupment," it waived its right to recover any of GPP's assets other than the "Premises" and "Collateral" defined in the Mortgage. GPP argues that because all other assets are beyond PNC's reach, PNC can recover nothing additional under the Promissory Note.[2] Accordingly, GPP argues that Count 1 of the Complaint, seeking judgment on the Promissory Note, must be dismissed.

PNC, on the other hand, denies that it waived its right to seek judgment on the Promissory Note. According to PNC, the rights of "setoff or recoupment"

---

[1] *Black's Law Dictionary* (9th ed. 2009) defines "recoupment" as follows: "1. The recovery or regaining of something, esp. expenses. 2. The withholding, for equitable reasons, of all or part of something that is due. See equitable recoupment (1), (2). 3. Reduction of a plaintiff's damages because of a demand by the defendant arising out of the same transaction. See equitable recoupment (3). Cf. setoff (2). [Cases: Set-off and Counterclaim 6.] 4. The right of a defendant to have the plaintiff's claim reduced or eliminated because of the plaintiff's breach of contract or duty in the same transaction. 5. An affirmative defense alleging such a breach. 6. Archaic. A counterclaim arising out of the same transaction or occurrence as the one on which the original action is based. ● In modern practice, the recoupment has been replaced by the compulsory counterclaim . . . "

[2] PNC maintains that it already has a security interest in all assets owned by GPP. As GPP points out, however, the definition of "Collateral," as defined in Exhibit B to the Open End Mortgage, Security Agreement and Assignment of Rents and Leases, specifically excludes, in Section (H), "all deposit, checking, savings, investment and similar account of the Debtor with Bank of any affiliate of Bank." It is not clear from the record whether GPP has any such accounts with PNC.

5

waived in the Loan Agreement are very narrow, and refer only to certain common law remedies available to a lender faced with a financially troubled borrower.

Under the common law right of setoff, when a borrower maintains a deposit account at the lender's bank, the bank is entitled to apply the borrower's deposits to amounts due under any demand note. *Marion Ins. Agency, Inc. v. Fahey Banking Co.*, 61 Ohio App.3d 9, 12, 572 N.E.2d 124, 126 (Ohio Ct. App. 1988). The common law doctrine of recoupment, on the other hand, is used as a defense to a debtor's claim against a creditor. For example, if the debtor files a counterclaim alleging that the creditor violated the Truth-in-Lending Act, 15 U.S.C. § 1601 *et seq.*, the creditor can reduce its obligation to the debtor by the amount of money owed on the loan. In this respect, it is like a setoff. However, the doctrine of recoupment applies only when both parties' claims arise from the same transaction. *See Household Fin. Corp. v. Yeager*, No. CA-4923, 1978 WL 43319, at *1 (Ohio Ct. App. Dec. 28, 1978). *See also Wentz v. Saxon Mortgage (In re Wentz)*, 393 B.R. 545, 554 (Bankr. S.D. Ohio 2008) ("Recoupment addresses 'the extinguishment of mutual claims arising from the *same* transaction.'"). PNC maintains that its waiver of these narrow common law rights to "setoff and recoupment" in no way forecloses recovery on the Promissory Note.

The Court cannot dismiss a cause of action on a motion for judgment on the pleadings unless it appears that the moving party is entitled to judgment as a matter of law. In this case, the viability of Count 1 hinges on principles of contract interpretation.

6

"Under Ohio law, the interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the court." *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 763 (6th Cir. 2008). The Ohio Supreme Court has held that "the cardinal purpose" for a court's examination of a contract is to ascertain the intent of the parties. *Foster Wheeler Enviresponse, Inc. v. Franklin Cnty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361, 678 N.E.2d 519, 526 (Ohio 1997). If a contract term is ambiguous, a jury may need to determine the parties' intent. *Savedoff*, 524 F.3d at 763. However, a term is ambiguous "only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations." *Id.* (quoting *Covington v. Lucia*, 151 Ohio App.3d 409, 784 N.E.2d 186, 190 (Ohio Ct. App. 2003)).

In determining whether a term is ambiguous, the contract "must be construed as a whole, so as to give reasonable effect to every provision in the agreement." *Id.* (internal quotations and citations omitted). Moreover, in determining the parties' intent, any writings executed as part of the same transaction must be read as whole. *Foster Wheeler Enviresponse*, 78 Ohio St.3d at 361, 678 N.E.2d at 526.

In this case, the Court concludes that the waiver of the right of "recoupment," contained in Section 7.11 of the Loan Agreement, does not preclude recovery on the Promissory Note. When all of the Loan Documents are read as a whole, the interpretation advanced by GPP is simply unreasonable.

7

PNC's waiver of the right of recoupment cannot possibly be interpreted as broadly as GPP suggests it should be.

GPP's interpretation of Section 7.11 is completely inconsistent with other provisions in the Loan Documents. Section 6.2 of the Loan Agreement, Ex. F to Compl., provides that, in the event of default, the lender may declare the entire unpaid balance to be immediately due, may exercise all enforcement remedies specified in the Loan Documents, including the right to foreclose the Mortgage and other collateral securing the Note, and "may exercise all of its rights and/or remedies available under law and/or equity." Likewise, Section 11 of the Promissory Note, Ex. B to Compl., states that in the event of default, the Bank can declare the loan immediately due and payable in full, and can "exercise all rights and remedies referenced in the Loan Agreement." In addition, Section 17 of the Promissory Note provides that the rights referred to in the Note are "in addition to and not in limitation of any other rights, powers, and privileges that Bank may otherwise have or acquire by operation of law, by other contract or otherwise."

Finally, Section 16 of the Open End Mortgage, Security Agreement and Assignment of Rents and Leases, Ex. C to Compl., broadly provides that upon default, the Bank may "exercise any or all or any combination of the rights, powers and remedies conferred upon or reserved to it under this Mortgage, every agreement or any other instrument . . . delivered in connection therewith, as well as all of its rights and remedies now or hereafter existing at law, in equity or by statute." This includes the right to "proceed at law or in equity *to collect the*

8

*entire indebtedness secured hereby and/or to foreclose this Mortgage* as against all or any part of the Mortgaged Property." Section 16(c) (emphasis added).

The parties clearly contemplated that, in the event of a default, the bank could not only foreclose upon the Mortgage, but could also take whatever additional steps were necessary to fully recover what was still owed under the terms of the Promissory Note and other Loan Documents. When construed in light of all of the Loan Documents, PNC's waiver of the right of "setoff and recoupment" simply cannot be reasonably interpreted to foreclose "recovery" under the Promissory Note. Therefore, the Court cannot say, as a matter of law, that PNC has no viable cause of action under Count 1 of the Complaint.

## IV. Conclusion

For the reasons set forth above, the Court OVERRULES Defendant Gator Piqua Partners LLLC's Motion for Judgment on the Pleadings (Doc. #18).

Date: August 5, 2013

WALTER H. RICE
UNITED STATES DISTRICT JUDGE