IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PNC BANK, NATIONAL
ASSOCIATION,                                :

       Plaintiff,
                                            :       Case No. 3:12-cv-369
   v.
                                                    JUDGE WALTER H. RICE
GATOR PIQUA PARTNERS,
LLLP, *et al.*,                             :

       Defendants.

---

DECISION AND ENTRY RE: APPLICATION OF SALE PROCEEDS TO
THE AMOUNT OWED BY DEFENDANT JAMES GOLDSMITH UNDER
THE TERMS OF THE PERSONAL GUARANTY; OVERRULING AS
MOOT DEFENDANT GATOR PIQUA PARTNERS, LLLP'S MOTION TO
STRIKE EVIDENCE (DOC. #104); CONFERENCE CALL SET

---

Only one claim, Count 6, remains in the above-captioned case.  It concerns

Defendant James Goldsmith's liability under the terms of the Guaranty executed in

connection with a $1.75 million loan from National City Bank, now PNC Bank, to

Gator Piqua Partners, LLLP ("GPP"), for the purchase of Piqua Plaza shopping

center.  In order to facilitate a possible settlement, the parties have asked the

Court to determine whether, under Ohio law, the $517,001 in proceeds from the

sale of the foreclosed property should be credited toward the amount owed by

Goldsmith under the terms of the Guaranty.  The parties have now fully briefed this

issue.  Docs. ##89, 90, 102, and 103.

Defendants GPP and James Goldsmith take the position that because

Plaintiff PNC Bank chose to proceed on the sale of the collateral before attempting

to collect on the Guaranty,[1] Goldsmith's liability cannot be determined until the

proceeds from the sale are credited toward GPP's outstanding debt.  Goldsmith

contends that, because he is responsible only for the "Borrower's obligations,"

which have now been reduced by $517,001 as a result of the sale, his liability

under the terms of the Guaranty should be reduced in an equal amount.  In

contrast, the bank maintains that he is not entitled to the benefit of the sale

proceeds, and claims the right to hold Goldsmith to the full measure of his

Guaranty.  For the reasons set forth below, the Court agrees with Plaintiff PNC

Bank.


I.      **Goldsmith's Guaranty**

The relevant terms of Goldsmith's Guaranty are as follows.  Goldsmith

executed the Guaranty in order to "induce" National City Bank to extend credit to

GPP, and assumed all risks in doing so.  He "unconditionally guarantee[d] to Bank

the payment of each and every obligation" of the Borrower, GPP.  Guaranty,

¶ 1(a), ¶ 6; Ex. A to Doc. #90.  His maximum liability was limited to 25% or 35%

"of the outstanding principal balance of the Note," the exact percentage dependent

on whether K-Mart exercised an option to extend its lease.  *Id.* at ¶ 1(b).

_____

[1] As Plaintiff points out, the asserted factual basis for this argument is
erroneous.  The Complaint asserts simultaneous claims for foreclosure and a
judgment on the Guaranty.

Paragraph 2 of the Guaranty states:

This Guaranty shall be construed as an absolute and unconditional guaranty of payment and not a guaranty of collection and Guarantor's liability shall be direct, immediate and not conditional or contingent upon resort first by Bank to the Borrower, any other Guarantor of the Guaranteed Debt, any collateral or security or any other remedy whatsoever for the Guaranteed Debt. . . .

The obligations of Guarantor hereunder shall not be released, discharged or in any way affected nor shall Guarantor have any rights against Bank by reason of: . . . (e) the exchange, sale, release or surrender of any such collateral or security . . . Bank may pursue all or any of its remedies at one or at different times.

*Id.* at ¶ 2.

## II.    Analysis

As a federal court exercising diversity jurisdiction over this claim, this Court must apply Ohio substantive law. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996). Guaranty agreements are construed in the same manner as other contracts. If the contract is clear and unambiguous, the Court looks to the plain language to determine the parties' intent. *Stone v. National City Bank*, 106 Ohio App.3d 212, 217, 665 N.E.2d 746, 750 (Ohio Ct. App. 1995). If ambiguous, the language is construed in favor of the guarantor (in this matter, Defendant Goldsmith). *Liquidating Midland Bank v. Stecker*, 40 Ohio App. 510, 516, 179 N.E. 504, 506 (Ohio Ct. App. 1930).

Plaintiff has cited to three Ohio cases that, in the Court's view, are almost directly on point, and dictate the result in this case. The first is *Milstein v. Simon*,

3

8th Dist. No. 40547, 1980 WL 354593 (Ohio Ct. App. Feb. 22, 1980).  In that case, Midwest Prestressed Corporation borrowed $475,000 from Cleveland Trust Company.  Plaintiffs signed a personal guaranty which limited their liability to "the balance due in excess of $350,000."  In other words, once the unpaid principal balance of the note was reduced to $350,000, the guarantors were automatically released from further liability.

After the borrower defaulted with an outstanding principal balance of $440,549.61, the bank foreclosed on the property and repurchased it for $279,547.18, reducing the outstanding debt to $161,002.43.  The guarantors argued that because the unpaid principal balance was now less than $350,000, they were relieved of any obligation under the guaranty.  The court disagreed. "We hold the proceeds of the foreclosure sale could not be considered a reduction of the unpaid principal balance so as to release the guarantors from their obligation to pay the unpaid principal balance in excess of $350,000." *Id.* at *3.  The court explained as follows:

> It may be presumed from the provisions of the guaranty and the August 4, 1971 letter agreement that the guaranty . . . was accepted as a security for the debt *in addition to* that afforded by the mortgage. Additionally, it is clear that Cleveland Trust would not have made the mortgage loan . . . without the guaranty. . .
>
> After reviewing the guaranty and the August 4, 1971 letter, we find the guarantors became debtors for the unpaid principal balance in excess of $350,000 immediately upon default by [the Borrower.]
>
> Upon default, the guarantors became liable for the balance of the unpaid principal in excess of $350,000.  Cleveland Trust's application of the proceeds of the foreclosure sale did not release the guarantors

4

from their obligation to pay the balance of unpaid principal in excess of $350,000. To hold otherwise would render the guaranty . . . meaningless and illusory.

It appears the purpose of the guaranty was not to secure payment of the entire unpaid principal balance, but to secure the reduction thereof to an amount Cleveland Trust deemed the mortgages a sufficient security therefor. The guaranty gave Cleveland Trust security for the balance of unpaid principal in excess of $350,000. Cleveland Trust apparently felt the mortgaged property was sufficient security for the loan only up to an amount of $350,000; therefore, it required a personal guaranty to secure the mortgage loan in excess of this amount.

We think a fair construction of the terms of the guaranty in light of the surrounding circumstances and the object intended to be accomplished by the parties precludes a finding that the proceeds of the foreclosure sale reduced the unpaid principal balance below $350,000 so as to automatically release the guarantors of their obligation under the guaranty.

*Milstein*, 1980 WL 354593, at *3-4 (emphasis in original) (internal citations

omitted).

The second case cited by Plaintiff is *Society National Bank v. Duffy*, 8th

Dist. No. 65246, 1994 WL 144486 (Ohio Ct. App. April 21, 1994). In *Duffy*, the

guarantor personally guaranteed $950,000 of a $4.75 million loan. At the time

the borrower defaulted, the outstanding principal balance was $4.592 million. The

guarantor argued that once the Bank received $950,000 of the $4.75 million from

*any* source, he was totally relieved of his obligation. The court rejected this

argument, finding that it was not supported by the terms of the guaranty. The

court noted that the guaranty did not require the bank to first proceed against the

borrower or the collateral, and contained no provision entitling the guarantor to

"full faith and credit" for the first $950,000 paid to the bank.  Nor did it contain a provision allowing the sale proceeds to be paid towards the obligation set forth in the guaranty.  *Id.* at *5.

*Stone v. National City Bank*, 106 Ohio App.3d 212, 665 N.E.2d 746 (Ohio Ct. App. 1995), is the third case cited by Plaintiff.  There, the guarantor personally guaranteed payment of the first $400,000 of a $1.6 million loan.  Once the outstanding principal balance fell below $1.2 million, the guarantor was to be released from liability.  That balance was still over $1.5 million when the borrower defaulted.  The guarantor argued that the bank had to first foreclose on the mortgage and apply the sale proceeds to the outstanding indebtedness, thereby reducing the outstanding debt below $1.2 million and releasing her from all liability.  In the alternative, she argued that she was entitled to reimbursement from funds realized from any *future* foreclosure sale, and that her right to those sale proceeds was superior to that of the bank.

Relying on *Duffy* and *Milstein*, the court rejected these arguments.  It noted that the guaranty specifically provided that the bank did not need to exhaust its remedies against the borrower before demanding payment under the guaranty, and contained no language that entitled the guarantor to the "first right to any money received by the Bank from its other collateral sources."  *Id.* at 218-19, 665 N.E.2d at 750-51.

The court stated that "*Duffy* and *Milstein* make it clear that, even if the bank had chosen to pursue the borrower and foreclose on the real estate, the monies

6

realized from foreclosure still would not have released appellant from her obligations under the guarantee agreement." *Id.* at 220, 665 N.E.2d at 752.  The parties had explicitly agreed that the bank could collect on the guaranty before liquidating the collateral.  The court refused to alter the terms of that agreement. *Id.* at 221, 665 N.E.2d at 752.  Citing *Restatement of the Law, Security* (1941) 383, Section 141, the court also concluded that until the borrower's debt was fully satisfied, the guarantor's right to any proceeds from a future sale of the property was subordinate to that of the bank. *Id.* at 219-20, 665 N.E.2d at 751.

Based on the holdings in *Milstein*, *Duffy*, and *Stone*, this Court finds in favor of Plaintiff herein.  The unambiguous language of Goldsmith's Guaranty indicates that the parties did not intend that proceeds from the sale of the property would reduce Goldsmith's liability under the Guaranty.

As in *Duffy* and *Stone*, Goldsmith's Guaranty was "absolute and unconditional," rendering him liable for the outstanding debt at the moment GPP defaulted on its obligation. *See Stone*, 106 Ohio App.3d at 218, 665 N.E.2d at 750 (citing *Mutual Fin. Co. v. Politzer*, 16 Ohio App.2d 83, 89, 241 N.E.2d 906, 910 (Ohio Ct. App. 1968)).

Even more importantly, as in *Duffy* and *Stone*, the parties specifically agreed that the bank could pursue its available remedies in any order, and that Goldsmith's liability was not contingent on the bank resorting first to the Borrower. In addition, the parties specifically agreed that Goldsmith's obligations would not be "in any way affected" by reason of the sale of the collateral or security.

7

Guaranty ¶ 2.  Finally, as in *Duffy* and *Stone*, there is no provision in the Guaranty specifically allowing Goldsmith to apply the sale proceeds as a setoff against his obligation on the outstanding principal balance of the Note.   For these reasons, the Court concludes that the parties did not intend that the sale of the property in foreclosure proceedings would reduce the scope of Goldsmith's liability.[2]

As in *Milstein*, Goldsmith executed the personal guaranty in order to induce the bank to loan the money to GPP, and it appears that the bank would not have otherwise agreed to do so.  Guaranty, ¶ 1.  Although Goldsmith agreed to guarantee payment of only 25% or 35% of the outstanding principal balance, it may be presumed, as in *Milstein*, that this was a layer of security *in addition* to that afforded by the mortgage. *See Kortlander v. Elston*, 52 F. 180, 183 (6th Cir. 1892) (noting that it would be absurd to require the creditor to suffer a loss by sharing the collateral with the guarantor "for the purpose of reducing the latter's liability on a guaranty, the only object of which could have been to supplement the collateral and increase [the creditor's] security").

Defendants attempt to distinguish *Milstein, Duffy,* and *Stone* on the grounds that the guarantors in those cases guaranteed payment of a specific *portion* of the debt, *i.e.*, the top 20%, or a specific *sum*, whereas Goldsmith guaranteed payment

---

[2] Defendants argue that this could result in a windfall to Plaintiff.  Paragraph 2 of the Guaranty, however, provides that once the debt is paid in full, Goldsmith has certain subrogation rights.  In any event, a windfall to Plaintiff is not a realistic concern in this case.  Even under a best case scenario, Plaintiff will suffer a loss of hundreds of thousands of dollars on this transaction.

of a certain percentage of the total outstanding debt.  The Court finds no basis for

such a distinction.  Under either scenario, the Court must examine the plain

language of the Guaranty to determine whether the parties intended that proceeds

from the sale of the property would be applied to reduce the guarantor's liability.

For the reasons stated above, the Court finds that this is not what the parties in

this case intended. Plaintiff is therefore entitled to apply the sale proceeds against

GPP's outstanding principal balance, *and* to hold Goldsmith to the full measure of

the Guaranty.

The cases cited by Defendants are not persuasive.  Defendants rely mainly

on *Resolution Trust Corp. v. GSW Associates*, No. 91AP-1084, 1992 WL 63309

(Ohio Ct. App. Mar. 24, 1992).[3]  In that case, the guarantors agreed to be

personally liable for the top 20% of a mortgage loan.  In other words, their liability

was to be extinguished once the principal balance was reduced to 80% of the

original amount of the loan.  The borrower defaulted and the bank purchased the

property at the foreclosure sale.  The trial court determined that the guarantors

were released from liability, because application of the sale proceeds had reduced

the outstanding principal balance to less than 80% of the original loan amount.

---

[3] Defendants also cite to *Arcanum Building & Loan Association v. Brehm*, 2d
Dist. No. 439, 16 Ohio Law Abs. 201, 1934 WL 2509 (Ohio Ct. App. 1934), and
*Women's Federal Savings Bank v. Akram*, 33 Ohio App.3d 255, 515 N.E.2d 939
(Ohio Ct. App. 1986), in which lenders obtained *deficiency* judgments from
guarantors *following* foreclosure sales.  But neither case addresses the precise
terms of the guarantees at issue.  The other cases cited by Defendants are from
outside Ohio and need not be discussed.

This decision was affirmed by the Tenth District Court of Appeals. It held that "[t]he language of the guarantee is clear and provides that appellees are only responsible for the top twenty percent of the loan. . . . The guarantee does not provide that, after the sale proceeds are paid on the loan, appellees are responsible for twenty percent of the balance." *Id.* at *3. The court also noted that "[n]either the note nor the guarantee limits the manner in which the principal balance may be reduced to extinguish appellees' guarantee of the top twenty percent of the note." *Id.*

The bank then asked the court to certify the case to the Ohio Supreme Court based on an alleged conflict with the Eighth District Court of Appeals' decision in *Milstein.* The court refused, finding no demonstrable conflict. It concluded that the plain language of the two guarantees was factually distinguishable with respect to the terms and conditions under which the guarantors' obligations would be satisfied. It further distinguished the guarantees by noting that, in *Milstein*, the guaranty was demanded by the bank as a condition of the loan, and the guarantors actually endorsed the note as accommodation makers. *Resolution Trust Corp. v. GSW Assocs.*, 82 Ohio App.3d 75, 81, 611 N.E.2d 447, 450 (Ohio Ct. App. 1992).

With respect to the question of the application of sale proceeds to a guarantor's obligations, the *Resolution Trust* decisions appear to have garnered little support among other Ohio courts. They were, in fact, criticized by the Eighth District Court of Appeals in *Stone,* which found that the alleged distinctions

10

between *Resolution Trust* and *Milstein* were not persuasive.  *Stone*, 106 Ohio

App.3d at 221, 665 N.E.2d at 752.  This Court agrees.  But even if the alleged

distinctions were persuasive, they cut against Defendants in this case.  As the

*Stone* court pointed out, the guaranty at issue in *Resolution Trust* was not

absolute, and there was no clause excusing the exhaustion of other remedies.  *Id.*

Goldsmith's Guaranty is clearly distinguishable on this basis.


**III.  Issues Outside the Scope of this Decision and Entry/GPP's Motion to Strike Evidence (Doc. #104)**

Defendants also argue that because Plaintiff did not satisfy certain

contractual requirements before Goldsmith revoked his liability, *i.e.*, making a

demand on him, giving him proper notice and an opportunity to cure, his liability

under the Guaranty never arose.  This argument, however, falls outside the scope

of this Decision and Entry.  If necessary, it will be addressed in connection with

the pending motion for summary judgment.

In response to Defendants' argument, Plaintiff attached numerous exhibits to

its bench brief, including deposition testimony and affidavits.  Defendants

subsequently filed a Motion to Strike this evidence, Doc. #104, arguing that it

exceeds the scope of legal analysis requested by the Court.  The Court agrees.

However, because the Court did not consider any of the extraneous evidence in

reaching the above decision, the Court OVERRULES Defendants' Motion to Strike,

Doc. #104, AS MOOT.

11

## IV.    Conclusion

The Court, having determined that the sale proceeds cannot be credited toward Goldsmith's obligations under the Guaranty, directs the parties to resume settlement negotiations as soon as possible to determine if this one remaining claim can now be resolved.

The Court will hold a telephone Status Conference on Monday, March 10, 2014, at 4:00 p.m., to determine the status of settlement negotiations and, if those efforts have proven unsuccessful, to set a schedule for additional discovery and further briefing on the pending motion for summary judgment.

Date: February 28, 2014

WALTER H. RICE
UNITED STATES DISTRICT JUDGE

12