IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PNC BANK, NATIONAL
ASSOCIATION,

    Plaintiff,

  v.

GATOR PIQUA PARTNERS,
LLLP, et al.,

    Defendants.

Case No. 3:12-cv-369

JUDGE WALTER H. RICE

DECISION AND ENTRY OVERRULING DEFENDANT JAMES
GOLDSMITH'S MOTION FOR RECONSIDERATION OF COURT'S
DECISION AND ENTRY SUSTAINING PLAINTIFF PNC BANK,
NATIONAL ASSOCIATION'S MOTION FOR RECOVERY OF ITS
EXPENSES, INCLUDING ATTORNEYS' FEES AND COSTS (DOC.
#145); SETTING CONFERENCE CALL TO DISCUSS OUTSTANDING
DISCOVERY ISSUES AND BRIEFING SCHEDULE ON MOTION FOR
ATTORNEYS' FEES AND COSTS

On May 12, 2015, the Court issued a Decision and Entry Sustaining Plaintiff PNC Bank, National Association's Motion for Recovery of its Expenses, Including Attorneys' Fees and Costs. Doc. #144. This matter is currently before the Court on Defendant James Goldsmith's Motion for Reconsideration of that Decision and Entry. Doc. #145.

I.  **Background and Procedural History**

The relevant facts and procedural history leading up to the May 12, 2015, Decision and Entry Sustaining Plaintiff PNC Bank, National Association's Motion for Recovery of its Expenses, Including Attorneys' Fees and Costs, are set forth in detail in that judicial filing, Doc. #144, and will not be repeated here.

In sustaining Plaintiff's motion, the Court held as follows:

- Paragraph 1(c) of Goldsmith's Guaranty, which obligates him to pay "expenses, legal and otherwise (including court costs and reasonable attorney's fees) paid or incurred by Bank in endeavoring to collect such amount from Guarantor, or any part thereof, in enforcing [the] Guaranty," is enforceable under Ohio Revised Code § 1319.02;

- Neither Ohio Revised Code § 1319.02 nor the terms of the Guaranty conditions an award of attorneys' fees on PNC's status as a prevailing party, and there is no evidence that PNC acted in bad faith in pursuing its claim against Goldsmith instead of accepting his pre-suit settlement offer of $199,950;

- The Guaranty's attorneys' fee provision is not unenforceable as against public policy;

- PNC's alleged failure to send a written, pre-suit demand indicating the specific amount he owed under the terms of the Guaranty does not relieve Goldsmith of his obligation to pay PNC's expenses; and

- Even if the notice could be deemed procedurally defective, in that PNC sent it to Goldsmith's attorney rather than to Goldsmith himself, it is undisputed that Goldsmith received actual notice, negating any claim of prejudice.

II.  **Motion for Reconsideration**

Pursuant to Federal Rule of Civil Procedure 59(e), Goldsmith has now filed a Motion for Reconsideration of the Court's May 12, 2015, Decision and Entry. Doc. #145.

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. Goldsmith correctly notes that motions for reconsideration are often treated as motions to alter or amend a judgment under Federal Rule of Civil Procedure 59(e), if filed within 28 days after the entry of judgment. In this case, however, because no final judgment has been entered with respect to Count VI of the Complaint, Rule 59(e) is inapplicable. *See Russell v. GTE Gov't Sys. Corp.*, 141 F. App'x 429, 436 (6th Cir. 2005) (holding that because there was no final judgment when the court entertained the motion for reconsideration, Rule 59(e) did not apply).

Nevertheless, "[d]istrict courts have authority both under common law and [Federal Rule of Civil Procedure] 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). *See also Am. Civil Liberties Union of Ky. v. McCreary Cty., Ky.*, 607 F.3d 439, 450 (6th Cir. 2010) (noting that where the district court has not yet entered final judgment, it is "free to reconsider or reverse its decision for any reason."). Typically, however, courts will reconsider an interlocutory order only when there is "(1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez*, 89 F. App'x at 959.

III.  Analysis

Goldsmith argues that the Court's ruling was clearly erroneous and must be reconsidered in order to prevent manifest injustice. More specifically, he argues that the Court erred in holding: (1) that PNC was entitled to attorneys' fees and costs even though it failed to strictly comply with the notice, demand and cure provisions of the Guaranty; and (2) that Ohio Revised Code § 1319.02 applies to the Guaranty. For the reasons stated below, the Court OVERRULES Goldsmith's Motion for Reconsideration.

A.  **Failure to Strictly Comply with Notice, Demand and Cure Provisions**

Goldsmith first argues that the Court erred in holding that PNC is entitled to attorneys' fees and costs, despite PNC's failure to strictly comply with the notice, demand and cure provisions of the Guaranty. He again argues that, after the Borrower failed to cure the default, PNC was required to provide him with a separate notice of default, a separate demand for the specific amount owed under the terms of the Guaranty, and an additional five days to cure the default, prior to filing suit. According to Goldsmith, PNC's failure to strictly comply with these requirements forecloses recovery of attorney's fees.[1] *See BankOne, N.A. v. PIC*

---

[1] The Court rejects PNC's argument that Goldsmith's stipulation to liability under the Guaranty effectively moots his claim that PNC's failure to strictly comply with the notice, demand and cure provisions of the Guaranty forecloses recovery of attorney's fees. Although it is seemingly inconsistent to argue that the notice was sufficient to trigger liability for the unpaid debt, but insufficient to trigger liability for attorney's fees, Goldsmith sufficiently preserved the issue of "entitlement to and amount of, attorney's fees and costs" when stipulating to partial resolution of Count VI. Doc. #111, PageID#1980.

4

*Photo Finish, Inc.*, No. 1665, 2006 WL 2876370, at *3 (Ohio Ct. App. Oct. 6, 2006) (holding that guaranties must be strictly construed in favor of the guarantor).

The Court, however, has already considered and rejected these same arguments. *See Northeast Ohio Coalition for Homeless v. Brunner*, 652 F. Supp.2d 871, 877 (S.D. Ohio 2009) ("Motions for reconsideration are not intended to re-litigate issues previously considered by the Court or to present evidence that could have been raised earlier."). As the Court previously noted, on October 2, 2012, PNC provided notice of the Borrower's default, and made a demand for payment through Goldsmith's designated attorney, at the address previously furnished. Goldsmith received actual notice of the default and demand, as evidenced by the October 9, 2012, response from his attorney, challenging PNC's calculations of the amount owed under the Guaranty. Doc. #137-1, PageID##2868-70. PNC did not file suit until after it received this letter, in which Goldsmith indicated that he was unwilling to pay what PNC claimed it was owed.

Under the circumstances presented here, the Court continues to firmly believe that PNC's alleged failure to strictly comply with the notice, demand and cure provisions does not absolve Goldsmith of liability for attorney's fees and costs.[2] Reconsideration is not needed to correct clear error or to prevent manifest

---

[2] Goldsmith mischaracterizes the Court's ruling when he states that "[t]he Court specifically found that the notice of default provided by PNC was procedurally defective." Doc. #145, PageID#3855. What the Court actually stated was "'although the notice *may have been* procedurally defective [because the notice

5

injustice.  As the Court previously noted, Goldsmith admitted at his deposition that his obligations under the Guaranty were not contingent on PNC's strict compliance with the notice, demand and cure provisions.  He made it clear that his unwillingness to cure was instead based on his belief that PNC was demanding three times what he thought he owed.  Doc. #142, PageID#3569-70.

Goldsmith further argues that, to the extent the Court held that he was not prejudiced by PNC's failure to strictly comply with the notice, demand and cure provisions of the Guaranty, the Court was required to hold an evidentiary hearing on this issue.  However, the prejudice that he cites in his brief stems not from PNC's failure to comply with these provisions, but from the Court's alleged failure to strictly enforce them.  He argues that the Court's ruling deprived him of the benefit of these bargained-for provisions.  He further contends that he took the litigation and settlement positions that he did because he believed that PNC's failure to comply with these provisions would absolve him of liability for PNC's attorneys' fees.  If Goldsmith believes that he was prejudiced by the Court's ruling, he is free to file an appeal; however, no evidentiary hearing is necessary.

Goldsmith has failed to show that reconsideration of the Court's ruling—concerning PNC's compliance with the notice, demand and cure provisions of the Guaranty—is needed to correct a clear error or to prevent manifest injustice.

---

was sent to Goldsmith's attorney instead of to Goldsmith himself], he suffered no prejudice" because he received actual notice.  Doc. #144, PageID#3844 n.2 (emphasis added).

6

**B.      Applicability of Ohio Revised Code § 1319.02**

Goldsmith next argues that the Court erred in finding that the Guaranty was governed by Ohio Revised Code § 1319.02.[3] He notes that his liability, under the terms of the Guaranty, was a *contingent* liability, which arose only after the Borrower defaulted on the loan and PNC complied with the notice, demand, and cure provisions of the Guaranty. According to Goldsmith, because his liability was contingent, it cannot be said for certain that, at the time he entered into the Guaranty, the total amount he owed exceeded $100,000. *See* Ohio Rev. Code § 1319.02(C).

Because Goldsmith raises this argument for the first time in his Motion for Reconsideration, the Court need not, and will not consider it at this juncture. *See Evanston Ins. Co. v. Cogswell Props., LLC*, 683 F.3d 684, 692 (6th Cir. 2012) ("Arguments raised for the first time in a motion for reconsideration are untimely."); *Bank of Ann Arbor v. Everest Nat'l Ins. Co.*, 563 F. App'x 473, 478 (6th Cir. 2014) (holding that the district court did not abuse its discretion in denying motion for reconsideration which introduced a new argument that could have been presented earlier).

---

[3]  Ohio Revised Code § 1319.02 provides that a commitment to pay attorneys' fees is enforceable to the extent it obligates payment of a reasonable amount, but only "if the total amount owed on the contract of indebtedness at the time the contract was entered into exceeds one hundred thousand dollars."

7

IV. **Conference Call**

Two discovery-related motions remain pending, each requiring resolution before Goldsmith files his memorandum in opposition to Plaintiff's Motion for Attorney's Fees and Costs, Doc. #146.

First, Goldsmith has filed a Motion to Extend All Discovery Related Deadlines Until an Order is Entered on Defendant's Motion for Reconsideration, Doc. #152. Goldsmith maintains that because the question of PNC's entitlement to fees has not been fully resolved, the discovery related to the reasonableness of the amount of those fees is premature. Likewise, Goldsmith argues that his attorney's billing records, and those of GPP, are not relevant unless and until he specifically objects to the reasonableness of the fees requested by PNC. While this Decision and Entry resolves the question of entitlement, it appears that some discovery requests by both parties are still outstanding. In his reply brief, Doc. #156, Goldsmith also urges the Court to strike certain settlement communications that PNC attached to its response in opposition, Doc. #153.

Second, PNC has filed a Renewed Motion to Compel James A. Goldsmith to Permit Inspection of Records, Doc. #150. Again, PNC seeks the billing records of counsel for Goldsmith and GPP, arguing that these records are relevant to the question of whether PNC's own attorney's fee request is reasonable. Goldsmith again argues that the request is premature because: (1) the Court has not yet ruled on the Motion for Reconsideration; and (2) Goldsmith has not yet filed a response to PNC's Motion for Attorney's Fees and Costs. Goldsmith further argues that the

8

request for his own billing records *and those of GPP* is overbroad, because PNC is entitled only to fees incurred in enforcing the terms of the Guaranty.

The Court will hold a conference call on **October 15, 2015, at 1:30 p.m.** (EST), to discuss these outstanding discovery issues, and to set a briefing schedule for Plaintiff's Motion for Attorney Fees and Costs, Doc. #146.

Date: October 8, 2015

WALTER H. RICE
UNITED STATES DISTRICT JUDGE

9